# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| NOEL LOPEZ DE LA CRUZ, <br><br> Petitioner, <br><br> vs. <br><br> KRISTI NOEM, *et al.*, <br><br> Respondents. | No. C25-150-LTS <br><br> **ORDER ON PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

This matter is before me on petitioner Noel Lopez De La Cruz's motion (Doc. 2) for a temporary restraining order (TRO) and preliminary injunction. De La Cruz is an alien who is being detained and faces removal proceedings. After an immigration judge denied his request for bond hearing, De La Cruz petitioned this court for habeas corpus relief under 28 U.S.C. § 2241 (Doc. 1-1) and then filed a motion (Doc. 2) for an order compelling either his release or a bond hearing before the immigration judge.[1]  Doc. 2

---

[1] In his reply (Doc. 23) to the Government's response (Doc. 19), De La Cruz seeks additional relief in which the Government cannot "appeal the outcome of the bond hearing to the [Board of Immigration Appeals]" and is "enjoined from asking for an automatic stay of removal for any administrative appeal or from the Board of Immigration Appeals applying *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025) to any administrative appeal proceeding." Doc. 23 at 16-17. I will not rule on these additional requests for relief because De La Cruz did not mention them until the last paragraphs of his reply brief. *See Am. Gen. Life Ins. Co. v. Billard*, No. C10-1012, 2011 WL 797675, at *6 n.10 (N.D. Iowa Mar. 1, 2011) (courts "generally will not consider arguments raised by a movant for the first time in his reply"). Further, De La Cruz cited no authority supporting his request, in violation of LR 5. Despite all this, should the Government ask for an automatic stay, numerous courts have found this violates the Due Process Clause. *See, e.g.*, *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1190 (D. Minn. 2025); *Jacinto v. Trump*, No. 4:25CV3161, 2025 WL 2402271, at *5 (D. Neb. Aug. 19, 2025); *Herrera v. Knight*, No. 2:25-CV-01366, 2025 WL 2581792, at *3 (D. Nev. Sept. 5, 2025) (stating "[i]n the early 2000s, several federal courts concluded the automatic stay provision violated the due process rights of detainees").

at 11.  In addition, the motion seeks attorney fees and costs.  *Id.*  On initial review, I entered an order (Doc. 3) directing respondents (collectively, the Government) to respond to De La Cruz's motion (Doc. 2).  The Government has responded (Doc. 19)[2] and De La Cruz has replied (Doc. 23).  Oral argument is not necessary.  *See* LR 7(c).

## II. BACKGROUND

### A. *Factual Background*

De La Cruz is an alien (Doc. 2 at 1 ¶ 1) and the Government alleges that he is a Mexican citizen who entered the United States without inspection.[3]  Doc. 1-2 at 1.  In June 2025, De La Cruz was arrested on a warrant for marijuana possession issued by the Iowa District Court for Washington County.  Doc. 1-5 at 3.  Washington County officials contacted Immigration and Custom Enforcement (ICE) and an ICE officer interviewed De La Cruz.  *Id.*  De La Cruz refused to answer questions about his citizenship status or when he entered the United States, but claimed to have been in the United States for more than 20 years.[4]  *Id.*  ICE placed a detainer on De La Cruz.  *Id.*  After the criminal charges were dismissed, ICE took custody of De La Cruz in July 2025 and held him at the Linn County Jail pending his immigration proceedings.  *Id.* at 3-5.

In August 2025, ICE served De La Cruz with a notice to appear before an immigration judge to show why he should not be deported.  Doc. 1-2 at 1.  At his appearance, De La Cruz requested the immigration judge release him on bond.  Doc. 1-

---

[2] Before the Government responded, I granted a motion (Doc. 16) by Dave Beuter, the Linn County Jail Administrator, and Brian Gardner, the Linn County Sheriff, to join the Government's briefing and motions.  Doc. 17.  Because I have granted joinder, I will treat all respondents as being in the same position.

[3] De La Cruz does not appear to refute this allegation.

[4] Confusingly, within his complaint, De La Cruz alternates between claiming he has been in the United States for fifteen years while at other times claiming he has been here for twenty years.  *Compare* Doc. 1 at 2 (fifteen) *with id.* at 5 (twenty).

2

4 at 1. The immigration judge refused, citing 8 U.S.C. § 1225(b)(2) to find that the immigration court lacked jurisdiction to consider bond. *Id.* De La Cruz claims that the immigration court's refusal to provide him a bond hearing under his circumstances violates his due process rights and federal law. Doc. 1 at 23-27.

### B. 8 U.S.C. §§ 1225 and 1226

This case tests the interplay between two immigration statutes: 8 U.S.C. §§ 1225 and 1226. Section 1225 covers "applicants for admission," a term defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). These applicants must undergo an inspection by an immigration officer to ensure their admissibility into the United States. 8 U.S.C. § 1225(a)(3); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). If they are found to be unlawful entrants, they are split into two categories.

First, if the alien is inadmissible due to fraud or willful misrepresentations, lacks necessary documentation or fits a designation by the Attorney General without having been continuously present in the United States for the past two years, then he or she may be summarily removed (excepting asylum or persecution claims). 8 U.S.C. § 1225(b)(1)(A) (citing *id.* § 1182(a)(6)(C), (a)(7)). Second, an alien who does not fit those categories is still detained pending a removal proceeding. *Id.* § 1225(b)(2)(A) (citing *id.* § 1229a). Either way, § 1225 does not anticipate the release of an applicant for admission pending a removal decision. *Cf. Jennings*, 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

Section 1226 governs the process of arresting and detaining aliens found inside the United States pending their removal. *Jennings*, 583 U.S. at 288. As the Supreme Court explained:

> Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" an alien detained under § 1226(a) "on …bond" or "conditional parole." *Ibid*.
>
> Section 1226(c), however, carves out a statutory category of aliens who may not be released under § 1226(a). Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1). The Attorney General may release aliens in those categories "only if the Attorney General decides … that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(c)(2). Any release under those narrow conditions "shall take place in accordance with a procedure that considers the severity of the offense committed by the alien." *Ibid*.
>
> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id*. at 288–89 (footnote omitted).

Federal regulations detail the bond procedure. First, Department of Homeland Security (DHS) officials make an initial custody determination. 8 C.F.R. § 236.1(c)(8)). If DHS officials decide to keep the alien detained, the person may request a bond hearing before an immigration judge. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* § 1003.19. At that time the alien may be released upon a showing by clear and convincing evidence that he or she is not a danger to the community or a flight risk. 8 C.F.R. §§ 236.1(c)(3), 1236.1(c)(3).

Thus, while aliens detained under § 1225(b) are not entitled to a bond hearing, detainees under § 1226(a) are (subject to exceptions at § 1226(c), inapplicable here). The

Government contends that De La Cruz is an applicant for admission who, under § 1225(b)(2), cannot be released pending his removal proceedings. De La Cruz resists being categorized as an applicant for admission and contends that the Government must abide by the procedures under § 1226(a), thus entitling him to a bond hearing.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes federal courts to issue TROs or preliminary injunctions. Such relief is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Thus, the movant has the burden of establishing its propriety. *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). There are four factors (known as the *Dataphase* factors) to consider before I may grant injunctive relief: (1) the likelihood of success on the merits, (2) the threat of irreparable harm to a movant absent an injunction, (3) the balance of harms an injunction would have on the other parties and (4) the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). "No factor is determinative, but the movant's probability of success is the most significant." *Wilbur-Ellis Co. v. Jens*, 139 F.4th 608, 611 (8th Cir. 2025) (citing *Wilbur-Ellis Co. v. Erikson*, 103 F.4th 1352, 1356 (8th Cir. 2024)).

### IV. DISCUSSION

De La Cruz requests either a TRO or preliminary injunction. Doc. 2 at 11. A TRO is not appropriate in this instance. TROs are "temporary," lasting for only 14 days—with the possibility of extension into 28 days. Fed. R. Civ. P. 65(b)(2). Given their temporary status, they are not typically appealable. *Id.*; *see also Trump v. J.G.G.*, 604 U.S. 670, 684 (2025) (Sotomayor, J., dissenting); *Dep't of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753, 754 (2025) (mem.) (Alito, J., dissenting). Because issuing a TRO in De La Cruz's favor would require the Government give him a bond hearing, it would effectively insulate the order from review until after he has already received his

5

requested relief. I find that a preliminary injunction—which is reviewable—is the only practical option to consider in this situation. Below, I will analyze whether a preliminary injunction is appropriate under the *Dataphase* factors[5] and whether to grant De La Cruz's request for attorneys' fees and costs.

A. *Dataphase Factors*

  1. *Likelihood of Success on the Merits*

De La Cruz argues that the Government's denial of his requested bond hearing violates his Fifth Amendment right to due process, violates federal law and its own administrative procedures. Doc. 2 at 5-6. Aliens have due process rights to life, liberty and property. *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). Since De La Cruz is in governmental custody, his liberty interest is at stake. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). For present purposes, the Government concedes that if De La Cruz is not an applicant for admission, then he would be entitled to a bond hearing. Doc. 19 at 11 n.5. Thus, if De La Cruz is not an "applicant for admission," the denial of his request for a bond hearing likely violates his due process rights.

Section 1225(a)(1) states:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). The term "admitted" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C.

---

[5] In a previous case involving similar facts, *Giron Reyes v. Lyons*, No. C25-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025), the Government argued I should require the petitioner to exhaust their administrative remedies before I heard the case and that alternatively, I did not have jurisdiction over the case. *Id*. at *3-4. I rejected these arguments, *id*., and the Government has not raised them here.

6

Case 1:25-cv-00150-LTS-KEM     Document 24     Filed 10/20/25     Page 6 of 13

§ 1101(a)(13)(A). Thus, the Government argues that any alien who illegally entered the United States without having been inspected by an immigration officer is an applicant for admission.

That reading is broad, but intuitive, as no qualifiers limit the scope on timing or entry grounds. Under this interpretation, because De La Cruz does not appear to have been inspected when he entered the United States (perhaps two decades ago (*see* Doc. 1-5 at 3)), he would be an applicant for admission. And because § 1225(b)(2) is the "catchall provision that applies to all applicants for admission," *Jennings*, 583 U.S. at 287, the Government contends that it must apply to De La Cruz.

On the other hand, even statutory language that is unambiguous in isolation must be read in context. *See Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality); *Pulsifer v. United States*, 601 U.S. 124, 133 (2024). The context clues present here point against De La Cruz's classification as an applicant for admission. As I explained in *Giron Reyes*,[6] I find the analysis in *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025), which I again incorporate, to be particularly persuasive on this point.[7] Considering § 1225 alongside its § 1226 companion demonstrates that the most natural interpretation of § 1225 is that it applies to aliens encountered as they are attempting to enter the United States or shortly after they gained

---

[6] *See* 2025 WL 2712427, at *4-5.

[7] As noted in *Pizarro Reyes*: "At least a dozen federal courts concur generally with this Court's interpretation of the statutory language as applied in this context." 2025 WL 2609425, at *7 (citing cases). In contrast, I am aware of only three courts adopting the Government's current, expansive interpretation of § 1225. *See, e.g.*, *Pena v. Hyde*, No. CV 25-11983, 2025 WL 2108913, at *2 (D. Mass. July 28, 2025) (determining that Brazilian national who illegally entered the United States in 2005 "remain[ed] an applicant for admission"); *Chavez v. Noem*, No. 3:25-CV-02325, 2025 WL 2730228, at *4-5 (S.D. Cal. Sept. 24, 2025) (determining that aliens "residing in the United States who originally entered the United States without inspection or parole, and have not affirmatively sought admission" were applicants for admission); *Vargas Lopez v. Trump*, No. 8:25-CV-526, 2025 WL 2780351, at *1, 7-10 (D. Neb. Sept. 30, 2025) (determining §§ 1225(b)(2) and 1226(a) overlap, which meant resident alien could be detained under § 1225(b)(2)).

7

entry without inspection. Section 1225 repeatedly refers to aliens entering the country. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in § 1225(b)(2), reflecting that Congress envisions applicants for admission as being arriving aliens. In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. In sum, § 1225 is set up with arriving aliens in mind.

Compare that to § 1226's broader language that realistically applies to any alien awaiting a removal decision. Considering § 1225 in its entirety, and in relation to § 1226, reveals that § 1225 is more limited than what that plain text of § 1225(a)(1) might indicate when construed in the abstract.

Moreover, courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). Adopting the Government's reading would be to find recent congressional enactments superfluous. Congress passed the Laken Riley Act to amend § 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Government's expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act.

8

In short, for purposes of De La Cruz's motion for entry of a preliminary injunction, I find that he is likely to succeed on the merits of his habeas petition, at least to the extent that he is entitled to a bond hearing. This factor weighs in favor of a preliminary injunction.

### 2. *Threat of Irreparable Harm*

The Government argues De La Cruz's detention has not caused irreparable harm because he has not identified other considerations, such as family or employment impacted by his detention. Doc. 19 at 20. Additionally, the Government argues the length of De La Cruz's detention is not sufficient to cause irreparable harm because his detention is not "indefinite." *Id.* Instead, the Government claims the detention is definite because the "detention lasts only through the course of his removal proceedings," which the government claims "is contemplated by statute and is not evidence of harm." *Id.*

De La Cruz alleges that he has lived in the United States for two decades with very limited criminal history[8] and in his reply he claims to have "local family ties in the United States (including his marriage to his U.S. Citizen wife)." Doc. 23 at 16. Although the Government notes De La Cruz was held in custody on the marijuana charges (Doc. 19 at 20), this does not mean an immigration judge would come to same conclusion. Because of De La Cruz's limited criminal history and family ties, an immigration judge might decide to grant him bond if the Government provided him a hearing. The Government's refusal to provide him a hearing ensures he will remain detained. "His loss of liberty is a paradigmatic example of potential irreparable harm." *Barrajas v. Noem*, No. 4:25-CV-00322, 2025 WL 2717650, at *6 (S.D. Iowa Sept. 23, 2025); *see also Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (characterizing "a

---

[8] The exact degree of De La Cruz's criminal history is unclear. In his complaint, he claims that other than the marijuana charges dismissed in 2025, he "has never been charged with or convicted of any other crimes besides contempt of court for violating a protective order by calling the protected party on two occasions." Doc. 1 at 23. Yet, he later claims to have "no criminal convictions as all criminal convictions against him were dismissed." Doc. 23 at 16.

9

loss of liberty" as "perhaps the best example of irreparable harm"). Further, even if the immigration judge does not release De La Cruz on bond, "the denial of his due process right to a hearing is also a form of irreparable harm." *Barrajas*, 2025 WL 2717650, at *6. This factor weighs in favor of a preliminary injunction.

### 3. *Balance of the Equities and Public Interest*

The balance of the equities and considerations of the public interest are typically distinct, yet they merge when the federal government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009). How much weight to give these factors is unclear. *Compare Noem v. Vasquez Perdomo*, 606 U.S. ___, 2025 WL 2585637, at *1 (Sept. 8, 2025) (mem.) (Kavanaugh, J., concurring) ("Particularly in 'close cases,' the Court also considers the balance of harms and equities to the parties, including the public interest." (quoting *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam)), *with NetChoice LLC v. Fitch*, 606 U.S. ___, 2025 WL 2350189, at *1 (Aug. 14, 2025) (Kavanaugh, J., concurring) (even though law was "likely unconstitutional," application to vacate stay should be denied because petitioner failed to "sufficiently demonstrate[ ] that the balance of harms and equities favors it"). Regardless of their proper weight, the result here is equivocal.

As already discussed, De La Cruz's interest in receiving a bond hearing is significant. However, the Government provides at least some measure of a counterweight. The Government has a considerable interest in controlling the presence of aliens in this country. *See Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024) ("[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens."). In addition, recent Supreme Court orders acknowledge the harm a governmental agency incurs when it is enjoined from acting within its apparent scope of authority. *See, e.g.*, *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025) (mem.); *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025) ("[T]he Government faces greater risk of harm from an order allowing a removed

10

officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."); *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration in original) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012)).

Of course, an injunction that simply compels the Government to grant De La Cruz a bond hearing (while not compelling his release), is a limited imposition on the Government's interests. Nonethless, I will consider the net effect of these merged factors to be neutral.

### 4. *Summary*

As noted above, a preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. After balancing the *Dataphase* factors however, I find a limited preliminary injunction to be appropriate. Specifically, I find that De La Cruz has met his burden of showing that he should be granted a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a).

Although this is a form of relief that De La Cruz seeks through his habeas petition, this order does not resolve his underlying case, as his is also seeking immediate release from custody. Thus, I will direct the Clerk's office to enter a standard merits briefing schedule.

### B. Attorney Fees

In addition to injunctive relief, De La Cruz seeks attorney fees and costs under the Equal Access to Justice Act (EAJA) "until a decision can be reached in this matter." Doc. 2 at 11. The EAJA states that "[e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses." 28 U.S.C. § 2412. In *Lackey v. Stinnie*, 604 U.S. 192 (2025), the Court considered the meaning of a "prevailing party" within 42 U.S.C. § 1988. *Id.* at

11

207.  Similarly to the EAJA, § 1988 allows courts to grant "the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Id.* § 1988

The Court held "prevailing party" to be a "legal term of art." *Lackey*, 604 U.S. 192 at 199-200.  When Congress uses legal terms of art, "it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *Id.* at 200 (quoting *United States v. Hansen*, 599 U.S. 762, 774 (2023)).  The Court continued, stating that "[a] preliminary injunction, which temporarily preserves the parties' litigating positions based in part on a prediction of the likelihood of success on the merits, does not render a plaintiff a 'prevailing party.'" *Lackey*, 604 U.S. 192 at 207.

Here, attorney fees and costs are not appropriate because De La Cruz is not yet the prevailing party.  Although I have granted a preliminary injunction to the extent that the Respondents must provide him a bond hearing in front of an immigration judge, this alone does not make him a prevailing party.  Therefore, his request for attorney fees and costs will be denied.

## V.  CONCLUSION

For the reasons set forth herein:

1.  Petitioner Noel Lopez De La Cruz's motion (Doc. 2) for a temporary restraining order and a preliminary injunction is **granted in part** and **denied in part**, as follows:

    a.  The motion is **denied** to the extent that it seeks a temporary restraining order.

    b.  The motion is **granted** to the extent it requests a preliminary injunction requiring a bond hearing before an immigration judge.  The Respondents are hereby **enjoined** from depriving De La Cruz of an individualized

12

Case 1:25-cv-00150-LTS-KEM     Document 24     Filed 10/20/25     Page 12 of 13

bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and shall provide him with such a hearing within **14 days** of the date of this order.[9]

    c.    The motion is **denied** to the extent it requests a preliminary injunction requiring De La Cruz's immediate release from custody.

    d.    De La Cruz's request for attorney fees and costs is **denied** without prejudice.

2.    The Clerk's office is **directed** to enter a standard 2241 habeas briefing schedule.

**IT IS SO ORDERED** this 20th day of October, 2025.

_____
Leonard T. Strand
United States District Judge

---

[9] In the alternative, of course, the Respondents may choose to release De La Cruz from custody.